UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                          )
                                         Plaintiff,     )
                                                  )     No. 1:14-cr-172
-v-                                                )
                                                  )     Honorable Paul L. Maloney
RONALD BRUCE MYERS,                                )
                                 Defendant.     )
_____        )

## OPINION

This matter is before the Court on Defendant Ronald Myers' motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (ECF No. 210), as well as his motions for discovery (ECF No. 213), for an evidentiary hearing (ECF No. 214), and seeking a change in the way documents are served on him (ECF No. 225). The Government has responded to Myers' substantive motion (ECF No. 233) and the evidentiary motions (ECF No. 219). Myers has replied (ECF No. 240). For the reasons to be explained, Myers is not entitled to any of the relief he seeks.

## I. Background

### A. Introduction

The Sixth Circuit has summed up Myers' criminal history succinctly: "Using about 105 other names, eleven other dates of birth, and eleven other social security numbers/employer identification numbers, Myers has devoted his life to stealing." *United States v. Myers*, 854 F.3d 341, 345-46 (6th Cir. 2017). "During his latest spree of thefts [which

led to his conviction in this case], Myers stole at least eight motor homes and then sold them to unsuspecting dealers, posing as their legitimate owner by using clone titles." *Id.* at 345.

"Myers met Walter Nunley, his main coconspirator in this round of thefts, in the early 1990s while they were both imprisoned in Kentucky." *Id.* at 346. "In September 2011, when Myers was released after being imprisoned for violating his parole, Nunley picked Myers up at the prison, and the pair went straight to work on stealing motor homes. By the time they were arrested, they had stolen at least eight motor homes across the United States." *Id.* Their modus operandi was as follows:

> Myers would first identify target motor homes online and contact their owners to obtain the motor homes' vehicle identification numbers (VINs), ostensibly to conduct a Carfax search on them. Myers would then forge Virginia titles for the targeted motor homes using their VINs. Using the forged Virginia titles, Myers would next apply for a clone title from either Mississippi or Illinois, as neither state verified that the out-of-state title—here, the forged Virginia title— was real. Myers and Nunley would then steal the targeted motor homes using master keys that they obtained online, pose as legitimate owners of the stolen motor homes using the clone titles from Mississippi or Illinois, and sell the motor homes to unsuspecting dealers.

*Id.* Myers would then launder the proceeds by using bank accounts he had created with fake names and fake identification documents.

Eventually, the partnership between Myers and Nunley unraveled. *Id.* at 347. Nunley began cooperating with an FBI agent, and in a related case, he was convicted of multiple counts of interstate transportation of stolen vehicles, money-laundering conspiracy, and other related counts. *Id.* Nunley was sentenced to 188 months' imprisonment and ordered to pay about $1.45 million in restitution. *Id.* And in 2015, Myers was convicted of multiple counts of interstate transportation of stolen vehicles, money laundering, and related conspiracies,

and he was sentenced to 360 months' imprisonment (ECF Nos. 117, 164). He appealed his conviction and sentence, and the Sixth Circuit affirmed both. *Id.* at 358.

### B. The Motor Home Thefts and Money Laundering

The following summary of Myers' criminal activity in the instant case comes from the Presentence Investigation Report ("PSR") (ECF No. 147).

In October 2011, Myers stole a 2006 Travel Supreme from Bankston Motor Homes in Huntsville, Alabama. Myers drove the motor home to Indiana, where he transferred it to a Colorado dealership employee. That dealership paid Myers (who was posing as "Justin Maury") $76,000 via two checks. Myers cashed the checks as Maury. The motor home was sold to a dealer in Texas, who sold it to a retired military veteran.

In December 2011, Myers stole a 2005 Monaco Signature Commander motor home from a dealer lot in Calera, Alabama. Myers transported the motor home to Florida, where he (again posing as Maury) sold it to a dealer in Orlando for $92,000.

In January 2012, Myers and Nunley stole a 2005 Monaco Dynasty Diamond IV motor home from a lot in Wildwood, Florida. Myers, this time posing as "Robert Peterson," sold the motorhome to a dealer in Nashville, Tennessee, for $60,000. Myers, still posing as Peterson, cashed the proceeds of the sale at various banks and check-cashing centers in the Nashville area. That motor home was later sold for approximately $120,000.

The same month, Myers and Nunley attempted to steal a motorhome from a dealer lot in Colorado, but that attempt was foiled by police.

Also in January 2012, Myers and Nunley stole a 2007 County Coach Magna 630 motor home from the lot of the Tom Johnson Camping Center in Charlotte, North Carolina.

They drove the motor home to Lexington, Kentucky. Myers dropped Nunley off there and continued to Mesa, Arizona. Myers, posing as "Richard Brown," sold the motor home to the Arizona RV Super Center for $215,000. The RV Super Center transferred the money to the account of "Solar Seal," a shell company Myers owned.

In March 2012, Myers and Nunley stole a 2006 Country Coach Rembrandt motor home from the Holland Motor Home & Bus Company in Holland, Michigan. Myers drove the motor home to Lexington, Kentucky. Nunley later drove the motor home to Las Vegas, Nevada, where it was recovered in January 2013.

In May 2012, Myers and Nunley stole two motor homes, a 2004 Newmar Essex and a 2005 Holiday Rambler, from the Midway RV Center in Kent County, Michigan. They drove the motor homes to Lexington, Kentucky. Nunley used the 2004 Newmar Essex for a vacation from Florida to New England before the pair agreed to sell the motor home to a dealership in Texas for $115,000. The dealership wired the purchase price to a "James Richley." On July 31, 2012, a check for $20,000 was written out of Richley's account, and on August 2, 2021, Myers, posing as Richley, withdrew $80,000 in cash.

Myers then drove the 2005 Holiday Rambler to Mississippi. Posing as a "Grover Sanders," Myers sold that motor home to a dealer in Alabama for $90,000. Myers received $10,000 in cash and the rest via check; he deposited the check into a bank account under the Sanders name and withdrew $68,000 in cash.

In July 2012, Myers stole a 2007 Newmar Mountain Aire motor home in Carthage, Missouri. He drove the motor home to Kentucky, where he met Nunley. The pair drove the motor home to Maine, and then Nunley's wife drove it to Lexington, Kentucky. Myers titled

the motor home in the name of "Richard Green," and then, posing as Green, transferred ownership to Nunley. In September 2012, Nunley traded the motor home to an Acura dealer in exchange for two vehicles and $76,000. This motor home was later recovered in West Virginia with extensive fire damage and a fake VIN number.

### C. The Arizona Case

On November 29, 2012, a criminal complaint was filed in the District of Arizona charging Myers with possession of a stolen motor vehicle (the 2007 Country Coach Magna 360) and wire fraud (ECF No. 9).[1] At the time, Myers was in custody in the Eastern District of Washington for violating his supervised release on a previous stolen motor home case (*Id.*). On January 9, 2013, Myers was indicted on one count of sale or possession of a motor vehicle, in violation of 18 U.S.C. § 2313, and one count of wire fraud (ECF No. 12). He pleaded guilty to the stolen motor vehicle count and agreed to pay restitution in an amount between $225,000 and $250,000 (ECF No. 32). In return, the Government agreed to no special offense characteristics other than the amount of loss, a reduction for acceptance of responsibility, a recommendation for the low end of the guideline range, and to dismiss the wire fraud charge (*Id.*).

The probation department calculated Myers' sentencing guidelines to be offense level 15 (based on a loss amount of $248,100 and three levels off for acceptance of responsibility), and his criminal history category to be VI, for a guideline range of 41-51 months' imprisonment (*see* ECF No. 36). However, because Myers had an extensive criminal history

---

[1] All citations in this subsection refer to documents in *United States v. Myers*, Case No. 2:13-cr-37 (D. Ariz.).

for the same type of offense and posed a high risk of recidivism, the probation officer recommended an upward departure (*see* ECF No. 37). The Government opposed the upward departure, based on the plea agreement (*see* ECF No. 43 at p. 6). On June 13, 2018, the Arizona District Court sentenced Myers to 41 months' imprisonment and $248,100.13 in restitution (*Id.* at 10). Myers was serving that sentence at the time of the Michigan indictments.

### D. The Nunley Prosecution

On August 22, 2013, Walter Nunley was indicted in this Court on eight counts (ECF No. 2).[2] Count 1 charged him with conspiring "with persons known and unknown" to transport stolen motor homes in interstate commerce, to possess and sell stolen motor vehicles, to transport stolen goods having a value of $5,000 or more in interstate commerce, to possess and sell stolen property, to tamper with motor vehicle identification numbers, and to utter and possess counterfeited State securities, in violation of various federal criminal statutes (*Id.*). Counts 2, 3, and 4 charged him with transportation of three separate stolen motor vehicles in interstate commerce (the 2006 Country Coach Rembrandt motor home, the 2004 Newmar Essex motor home, and the 2005 Holiday Rambler motor home stolen in this district) (*Id.*). Counts 5, 6, and 7 charged him with transportation of stolen goods (the contents of the three motor homes) in interstate commerce and Count 8 charged him with making a false statement to a federal agent (*Id.*). On October 31, 2013, a superseding indictment was returned which added a ninth count, conspiracy with "persons known and

---

[2] All citations in this subsection refer to documents in *United States v. Nunley*, Case No. 1:13-cr-158 (W.D. Mich.).

unknown" to launder the proceeds of the stolen motor homes (ECF No. 16). Both indictments also included forfeiture allegations.

On January 14, 2014, Nunley pleaded guilty to all nine counts without a plea agreement (*see* ECF No. 29). He also stipulated to an entry of a forfeiture order in the amount of $512,000 (ECF Nos. 31, 33). The same day, Nunley gave a proffer interview to Government agents: He told them about his involvement in the theft of various motor homes with Myers and provided them with a description of Myers' modus operandi (ECF No. 45 at ¶¶ 83-84). In February 2004, Nunley's wife, Sarah Nunley, also gave a proffer interview regarding the assistance she gave to Myers and Nunley (*Id.* at ¶¶ 85-94).

The probation department recommended a sentence of 240 months' imprisonment and restitution in the amount of $1,450,215.33 for Nunley (*Id.* at PageID.361). At sentencing, the Court granted the Government's U.S.S.G. § 5K1.1 motion, which was based on Nunley's cooperation against Myers (ECF No. 61 at PageID.532-33). That reduced Nunley's guideline range to 188-235 months' imprisonment (*Id.* at PageID.534). The Court sentenced Nunley to 188 months' imprisonment and ordered restitution to be made in the amount of $1,450,215.33 (ECF No. 55). The Judgment stated that the restitution was to be joint and several with "Ronald Myers in District of Nevada [sic] case no. 2:13-CR-37-01, and as well as any future case prosecuted in the Western District of Michigan." (*Id.*, PageID.455). The Judgment has since been amended to change the amount of restitution payable to an insurance company, but the total amount of restitution and the joint and several language of the Judgment has not been changed (*see* ECF Nos. 59, 67).

### E. The Myers Indictments

On September 24, 2014, a grand jury returned an indictment charging Myers with three counts of transportation of a stolen motor vehicle and one count of conspiring with Walter Nunley, Sarah Nunley, David Laconte, Stephen Hall and with other persons known and unknown to perform the motor home theft scheme (ECF No. 2). Myers was transported to the Western District of Michigan and pleaded not guilty to all charges (ECF No. 11). Attorney Jolene Weiner-Vatter was appointed to represent him in this case (ECF No. 7). In December 2014, a superseding indictment was returned (ECF No. 42). That indictment added a conspiracy with Nunley to engage in money laundering, and two charges of money laundering. Myers pleaded not guilty to these charges as well (ECF No. 54).

### F. The Trial

Myers' trial began on April 13, 2015, before now-retired Judge Robert Holmes Bell (*see* ECF No. 107). Over the course of six days, the Government introduced hundreds of exhibits and called over 50 witnesses, including Walter and Sarah Nunley, Brenda Lucas, and Steven Hall. Myers did not present a case (*see* ECF No. 204, PageID.3723-26). The jury returned a guilty verdict on all counts (ECF No. 117).

### G. Sentencing

After the trial, Myers filed a pro se motion to "replace" his attorney, Weiner-Vatter, for sentencing (ECF No. 124). He accused her of "working with the government against his interest in this matter," and refusing to raise various sentencing issues he wanted to raise (*Id.* at PageID.814, 818). He asked the Court to allow him to represent himself at sentencing, "or to appoint new counsel to represent him at sentencing" (*Id.* at PageID.821). The Court

held a hearing on the motion, at which Myers admitted that he did not have any evidence that Weiner-Vatter was working with the government, "other than her actions," some of which he disagreed with (ECF No. 176 at PageID.2454). Myers listed some of his disagreements with Weiner-Vatter, but she responded by describing all the things she had done at Myers' request, including changing her trial strategy at the last minute (*Id.* at PageID.2457-59). She said, "if I didn't file a motion, it was because I did not feel the motion was legally relevant or it was frivolous or it wasn't the correct timing or it wasn't on our side" (*Id.* at PageID.2461). The Court noted how often Weiner-Vatter had conferred with Myers during the trial, and how he would usually "concur" by either nodding or indicating that he was deferring to Weiner-Vatter (*Id.* at PageID.2465). The Court stated that there was not "any issue that Ms. Weiner-Vatter either neglected to raise or fell into an omission of doing something that from this Court's perspective should have been done." (*Id.* at PageID.2467.) The Court determined that Weiner-Vatter should not be "dismissed" for sentencing, but decided to appoint attorney Brian Lennon as "co-counsel" for sentencing, "to sit through this matter with Mr. Myers and Ms. Weiner-Vatter." (*Id.* at PageID.2468.) When asked if Myers had any questions about the Court's ruling, Myers said, "No, sir. Thank you." (*Id.* at PageID.2469.)

The probation department calculated Myers' base offense level as level 32, based on an intended loss of $2,962,468.86, more than 10 victims, sophisticated means, possession or use of device making equipment, and an organized scheme to steal motor homes (ECF No. 147 at ¶ 110). The probation department then applied a two-level enhancement for conviction under 18 U.S.C. § 1956, a two-level enhancement for sophisticated money

laundering, a four-level increase for Myers' leadership role in the offense, and a two-level increase for obstruction of justice, for a total offense level of 42 (*Id.* at ¶¶ 111-16). Myers' criminal history resulted in a criminal history score of 17, which placed him in category VI (*Id.* at ¶ 136). This combination produced a guideline range of 360 months to life (limited by the combined statutory maximum to 1,140 months) (*Id.* at ¶184). The probation department recommended restitution in the amount of $2,828,332.21 (*Id.* at ¶194). The probation department later filed an addendum to the PSR, recommending that Myers receive an adjustment for the 34 months he had already served on the Arizona sentence, and that "the sentence for the instant offense run concurrently with the remaining undischarged term of imprisonment" in the Arizona case, such that the total sentence would remain 360 months' imprisonment (ECF No. 160).

Attorneys Lennon and Weiner-Vatter filed a sentencing memorandum objecting to the intended loss amount, the enhancement for possession/use of device making equipment, the use of specific offense characteristics from U.S.S.G. § 2S1.1(b), and enhancements for role in the offense and obstruction of justice (ECF No. 159). They also argued that Counts 2, 3, and 4 should merge with Count 1, the overarching conspiracy charge; that the restitution order should not include the $248,100.13 in restitution ordered in the Arizona case; that the sentence imposed in this case should run concurrent with the Arizona sentence; and that the Court should avoid any unwarranted disparity with Nunley's sentence of 188 months (*Id.*). The defense argued for a sentence not to exceed 240 months (*Id.*).

At the sentencing hearing, held on October 9, 2015, defense counsel argued their objections (*see* ECF No. 178 at PageID.2498-2535). The Court denied all objections (*Id.*).

When asked if there were any objections to the restitution amount, defense counsel sought to ensure that the restitution order did not include the $248,100.13 in restitution ordered in the Arizona case (*Id.* at PageID.2535-36). The Court then reviewed the list of potential restitution payees with counsel and eliminated payments to Fountain Hills RV and Tom Johnson, as they were associated with the Arizona case (*Id.* at PageID.2536-39). That resulted in a reduced restitution amount of $2,418.172.99 (*Id.* at PageID.2539). Counsel also clarified that the joint-and-several provision with Nunley would mean that restitution dollars would only be collected once, regardless of who paid (*Id.* at PageID.2539-40).

Prior to allocution, the Court asked Myers if he was "satisfied with the advice and counsel you have been given here by your lawyers?" (*Id.* at PageID.2541). Myers said, "Oh, not completely . . . we agreed to disagree on various issues." (*Id.*) "[W]e reached an agreement that these are the objections they were going to raise." (*Id.*) During allocution, Myers' lawyers argued in favor of a downward variance (*Id.* at PageID.2542-44). Myers then raised several other sentencing issues his counsel had declined to raise: a double jeopardy issue, two multiplicity issues, and the probation officer's alleged failure to show his work when calculating the guidelines (*Id.* at PageID.2544-48).

Following allocution, the Court made a guideline finding of level 42 and criminal history category VI, for a guideline range of 360 months' to 1,140 months' imprisonment (the statutory maximum) (*Id.* at PageID.2558). The Court imposed a total sentence of 360 months' imprisonment, which "includes an adjustment of 34 months downward to 360 from the term of custody you've already served that you will not be credited for in the District of . . . Arizona." (*Id.* at PageID.2559.) "The 360-month sentence will be served concurrently

11

with the remaining undischarged term of imprisonment for the District of Arizona case."
(*Id.*) The Court also ordered restitution in the amount of $2,418,172.99 "which is joint and several with Mr. Nunley." (*Id.* at PageID.2560.) At the conclusion of the sentencing hearing, the Court asked, "Any objections not previously raised?" (*Id.* at PageID.2562.) There were no such objections (*Id.*).

Judgment was entered on October 14, 2015, consistent with the Court's oral sentence (ECF No. 164). The judgment itemized the amount of restitution due each victim (*Id.*). It included "[r]estitution in the total amount of $2,418,172.99, joint and several with Walter J. Nunley's related case 1:13-CR-158." (*Id.* at PageID.1196.) The Court had previously entered a stipulated order of criminal forfeiture in the amount of $780,000, which was also "joint and several with that imposed against Walter J. Nunley in *United States v. Nunley,* 1:13-cr-158 (RHB)." (ECF No. 137).

### H. The Appeal

Myers filed a timely notice of appeal (ECF No. 166). Attorney Kenneth Tableman was appointed to represent Myers on appeal (ECF No. 198). On February 18, 2018, Tableman filed a lengthy brief raising seven issues: (1) improper venue for Counts 5, 6, and 7 (the money laundering counts); (2) Counts 1, 2, 3, and 4 were multiplicitous and should have been merged; (3) the Court failed to give a venue instruction on the money laundering counts; (4) Counts 1 and 5 were multiplicitous and should have been merged; (5) the Court erred by denying Myers' requests to represent himself; (6) the Court erred in (a) calculating the amount of loss, (b) applying a sophisticated money laundering enhancement, and (c) applying a leadership-role enhancement, and (7) the Court erred by refusing to consider a

pending sentencing guideline amendment (*see* Sixth Circuit Case No. 15-2238, Myers' Brief at Docket No. 20).

On April 14, 2017, the Sixth Circuit issued a published opinion affirming Myers' conviction and sentence. *Myers,* 854 F.3d 341. The panel held that venue was proper in the Western District of Michigan on the money laundering counts; that the charges against Myers were not multiplicitous; that the district court did not err in denying Myers' requests to represent himself; that the amount of loss calculation was not clearly erroneous; that the Court did not "double-count" by applying an enhancement for sophisticated money laundering; that the court did not err in applying a leadership enhancement; and that the Court was not required to consider a pending guideline amendment. *Id.* at 349-58. One judge dissented in part and would have held that venue did not properly lie in the Western District of Michigan for Counts 6 and 7, the substantive money laundering counts. *Id.* at 358-61 (Kethledge, J., concurring in part and dissenting in part).

Myers' petition to the Supreme Court for a writ of certiorari was denied on January 8, 2018. *Myers v. United States,* 138 S. Ct. 638 (Mem) (2018).

### I. Myers' § 2255 Motion

Myers filed a timely motion pursuant to 28 U.S.C. § 2255 on December 17, 2018 (ECF No. 210). The case was reassigned to this judicial officer due to Judge Bell's retirement (*see* ECF No. 209). The Government responded on June 6, 2019 (ECF No. 233) and Myers replied on September 9, 2019 (ECF No. 240).

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (internal quotation marks omitted)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

### B. Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). No hearing is required if a petitioner's allegations "cannot be accepted as true because they are

contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## C. Procedural Default

Generally, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Id.* An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

## D. Ineffective Assistance of Counsel

The right to counsel at a criminal trial, enshrined in the Sixth Amendment, assures the fairness and legitimacy of the trial process. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Establishing ineffective assistance of counsel can therefore excuse the failure to raise a particular claim at trial or on direct appeal. *Id.* at 383; *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993). The two-part test for ineffective assistance of counsel was outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must first show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. When reviewing allegations of ineffective assistance, this Court must "strongly presume[]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690 (internal quotation marks omitted)). The defendant must also show that, but for counsel's errors and omissions, a reasonable probability exists that the

result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Explained another way, the defendant must show that the alleged errors in counsel's performance created actual prejudice and worked to the defendant's "substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). For this second factor, the defendant must show actual prejudice, not the mere possibility of prejudice. *Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986).

Ultimately, the question is not simply whether defense counsel was simply inadequate, but rather whether defense counsel was so thoroughly ineffective that the errors caused defeat that was "snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc). Necessarily then, when the alleged underlying error by counsel lacks merit, counsel cannot be deemed constitutionally ineffective for failing to raise the issue. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments in order to avoid a charge of ineffective assistance of counsel.").

### III. Analysis

Myers brings fifteen grounds for relief in his motion but concedes two in his reply brief (Ground Ten and Ground Twelve) (*see* ECF No. 240 at PageID.4224-25). The Court will address the remaining thirteen claims in the order presented.

### Ground One: Ineffective Assistance of Counsel – Double Jeopardy/Prior Punishment

Myers claims that his trial and appellate counsel were ineffective for failing to raise a double jeopardy objection in the district court and on appeal. He argues that double jeopardy applied because he was previously "punished" in Nunley's case, No. 1:13-cr-158. This

argument hinges on the part of Nunley's judgment that orders that restitution was to be joint and several with "Ronald Myers in District of [Arizona] case no. 2:13-CR-37-01, and as well as any future case prosecuted in the Western District of Michigan." Myers now argues that this language in Nunley's case barred any future prosecution of Myers on the same charges.

The Double Jeopardy Clause of the U.S. Constitution guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This clause provides three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993). But for the Fifth Amendment bar against double jeopardy to apply, in the context of multiple punishment, the defendant must show that he has been "punished" for the "same offense" in "successive prosecutions." *Hudson v. United States*, 522 U.S. 93, 98–99 (1997). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense[.]" *Id.*

This means that there can be no double jeopardy in the absence of a prior jeopardy. *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir. 1994) (citing *Serfass v. United States,* 420 U.S. 377, 389 (1975)). In *Torres,* the defendant in a criminal prosecution claimed that he was placed in double jeopardy by a prior forfeiture judgment in a proceeding to which he was not a party. *Id.* at 1464. The Seventh Circuit held that "[a]s a non-party, Torres was not at risk in the forfeiture proceeding, and '[w]ithout risk of a determination of guilt, jeopardy does not attach[.]' " *Id.* at 1465 (quoting *Serfass,* 420 U.S. at 389). "Torres was no more 'in jeopardy' in a forfeiture proceeding in which he was not a party than he would have been in

a separate trial of [his co-defendant] . . . that could have ended with a finding by the judge that Torres and [his co-defendant] sought to buy cocaine[.]" *Id.* Here, as in *Torres,* Myers was not a party or defendant in Nunley's case. He was, at most, an unindicted conspirator; He was not at risk of a determination of guilt in that case. *Id.*; *see also Serfass*, 420 U.S. at 391-92; *Edmonds v. Smith*, 922 F.3d 737, 740 (6th Cir. 2019) ("one must generally have been a party to a litigation to be bound by its judgment"). The Court had no jurisdiction to impose a "punishment" against Myers in Nunley's case.

It is unclear why Judge Bell ordered that restitution be "joint and several" with Myers in Nunley's case since Myers was not a defendant in that case. Although 18 U.S.C. § 3664(h) provides that "[i]f the court finds that more than [one] defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant," the Sixth Circuit has held, in an unpublished opinion, that this provision does not apply when the defendant is "the only person charged in the indictment." *United States v. McGlown*, 380 F. App'x 487, 491 (6th Cir. 2010). Thus, regardless of whether Judge Bell was without jurisdiction to order that restitution be joint and several with Myers in Nunley's case, the order was not enforceable as to Myers since Myers was not a party to that case. The order in Nunley's case cannot constitute "punishment" against Myers, and in turn, Myers was not placed in "jeopardy" in Nunley's case. His double jeopardy argument is without merit.

Myers' counsel cannot be ineffective for failing to raise a frivolous issue. *See Sutton v. Bell,* 645 F.3d 752, 755 (6th Cir. 2011). In her affidavit, Weiner-Vatter indicated that she

did not pursue Myers' double jeopardy argument because it was "without merit." (Weiner-Vatter Affidavit, ECF No. 226 at ¶7(a).) She correctly notes that "there is no case law or statute supporting any such position and Defendant Myers failed to raise any such issue on appeal." (*Id*.) Myers' appellate counsel considered the double jeopardy issue "at length and declined to raise it because [he] concluded it lacked merit and would detract from other more meritorious issues." (Tableman Affidavit, ECF No. 222 at PageID.4063.) Attached to his affidavit was a copy of a letter dated January 19, 2016 that he sent to Myers explaining why he was not going to raise the double jeopardy issue on appeal: "You were not a defendant in that case (Nunley's case). The district court had no authority to order you to pay restitution. Your payment, even if compelled by the Bureau of Prisons, does not make the court's invalid judgment, valid." (*Id*. at Ex. A.) He informed Myers that "[n]umerous courts have held that for the district court to validly order restitution under 18 U.S.C. 3664(h), the defendant must have been before the court, or included, in the same indictment." (*Id*.). He also told Myers, "[i]f you can find me a case that holds that the voluntary payment of restitution in a case where the defendant was not named in the indictment has a double jeopardy effect on a later order of restitution, please send it to me." (*Id*.) Myers did not and has not cited any such case.

Neither counsel was ineffective for failing to assert Myers' frivolous double jeopardy claim. Furthermore, Myers is unable to show that the outcome of his case would have been different had his counsel pursued this argument, since any such argument would certainly have been rejected. Ground One of Myers' motion has no merit.

## Ground Two: Ineffective Assistance of Counsel – Duplicity

Myers argues that trial counsel was ineffective for failing to properly raise the duplicity issue that he sees in Count One. Myers maintains that the indictment improperly alleged multiple separate conspiracies within Count One (one between Myers and Nunley, and a separate conspiracy between Myers and his helper Steven Hall), and that trial counsel was ineffective when she failed to pursue this issue on his behalf.

Myers' position is directly contradicted by the record. Weiner-Vatter filed a motion to dismiss the indictment for duplicity (ECF No. 25) with a thorough brief in support (ECF No. 26). The Court took the issue under advisement until trial; on the fifth day of trial, Weiner-Vatter presented this argument to the Court (*see* Trial Transcript, Volume V, ECF No. 203 at PageID.3670-71). Weiner-Vatter also requested a jury instruction as to multiple conspiracies (*Id.* at PageID.3705), and the Court instructed the jury that it could consider whether there were multiple conspiracies, and that it must acquit if the Government proved that Myers was in a conspiracy not charged in the indictment (ECF No. 145 at PageID.980-81). Given this record, the Court concludes that the duplicity issue was properly and repeatedly raised by Weiner-Vatter. Myers' argument that she was ineffective for failing to raise the issue is contradicted by the record, and it is meritless.

## Ground Three: Ineffective Assistance of Counsel – Fatal Variance

Myers next argues that trial counsel was ineffective for failing to raise the fatal variance issues he believes occurred during trial. A fatal variance occurs when the evidence presented at trial proves facts materially different from those charged in the indictment. *See, e.g., Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999). "To obtain reversal of a conviction because of

a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000). "The indictment must inform the defendant of the charges against him, but it need not inform him point-by-point of the manner in which the government will prove its case." *United States v. Bradley*, 917 F.3d 493, 504 (6th Cir. 2019).

Myers argues that two[3] fatal variances exist. First, he argues that the conduct related to the Travel Supreme motor home stolen in Huntsville, Alabama, was not charged in the indictment. This is problematic, Myers argues, for three reasons: 1) because he was not notified of these allegations before trial; 2) because there is a possibility that one or more jurors voted to convict him because of this conduct, which was not charged; and 3) he is now at risk for double jeopardy because this crime was not charged. In Myers' view, Weiner-Vatter's failure to address this issue prejudiced him, and therefore, she was ineffective for failing to raise the issue. But, as above, this argument is directly contradicted by the record evidence. Weiner-Vatter explicitly raised this argument on the fifth day of trial (*see* ECF No. 203 at PageID.3671-74, 3701). The Court rejected this argument, stating that Myers was "trying to treat the indictment as a bill of particulars, and it is not." (*Id.* at PageID.3702). Given this record, the Court concludes that this variance issue was properly raised by Weiner-Vatter. Myers' argument that she was ineffective for failing to raise the issue is contradicted by the record, and it is meritless.

---

[3] Myers states that he is bringing three fatal variances, but only two are presented (*see* ECF No. 211 at PageID.3870-71).

To the extent that Myers brings a claim that Weiner-Vatter was ineffective for failing to object on lack-of-notice grounds, that too is contradicted by the record. The Huntsville theft was noted on the first page of the Government's trial brief (*see* ECF No. 89 at PageID.535); counsel stipulated to the introduction of evidence used to prove the Huntsville theft (*see* ECF Nos. 84, 99); and Weiner-Vatter confirmed that the Government provided discovery to the defense on this theft (*see* ECF No. 226 at ¶ 9(c)). Thus, any lack-of-notice objection would have been futile, so counsel cannot be ineffective for failing to raise such an issue. *See Sutton,* 645 F.3d at 755.

And to the extent that Myers seeks to bring a preemptive double jeopardy argument, that too is meritless. The Huntsville theft was properly considered as part of this case. If Myers is ever charged with that conduct again, he may raise the double jeopardy argument at that time, but he cannot preemptively raise such an argument.

Myers' second fatal variance argument is a repetition of Ground Two: he argues that Count 1 of the indictment charged a single conspiracy, but the evidence at trial showed three separate and distinct conspiracies. This argument is rejected for the same reason as Ground Two: it is plainly contradicted by the record.

## Ground Four: Ineffective Assistance of Counsel – Insufficient Evidence

Here, Myers argues that Weiner-Vatter was ineffective for failing to argue that there was insufficient evidence to prove money laundering. Myers largely challenges the sufficiency of the evidence regarding his "intent to disguise" the funds he received through his system of motor home thefts, claiming that the evidence showed at best "money spending, not money laundering." The Court disagrees.

To evaluate a defendant's claim that the evidence is insufficient to support a conviction, the Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A defendant "bears a very heavy burden" in a sufficiency of the evidence challenge. *United States v. Davis*, 397 F.3d 340, 344 (6th Cir.2005) (internal citations omitted).

To prove concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(b), the United States had to prove:

(A) First, that the defendant conducted a financial transaction.

(B) Second, that the financial transaction involved property that represented the proceeds of some specified unlawful activity.

(C) Third, that the defendant knew that the property involved in the financial transaction represented the proceeds from some form of unlawful activity.

(D) Fourth, that the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

*See* Sixth Circuit Pattern Jury Instruction § 11.02.

Myers' argument here fails for two reasons. First, because Weiner-Vatter argued that there was insufficient evidence to prove the money laundering charges (*see* ECF No. 203 at PageID.3670). The insufficient evidence argument was properly raised at trial. Myers' argument that Weiner-Vatter was ineffective for failing to raise the issue is contradicted by the record, and it is meritless.

On the merits, though, the record was replete with evidence that Myers intentionally laundered money. Myers argues that this is not the case because the financial transactions

were part and parcel of the theft, interstate transportation, and sale of the motorhomes: in essence, Myers argues that until he received (or withdrew) the proceeds of the sale of the motorhome in cash, he could not launder them.

This is a fundamental misunderstanding of the elements of the substantive crime of theft of a vehicle. For each substantive count, the Government only needed to prove (1) that the vehicle was stolen, (2) that defendant transported it (or caused it to be transported) in interstate commerce, and (3) that defendant knew the vehicle was stolen. 18 U.S.C. § 2312. The Government never need to prove that any financial transaction occurred, nor did it need to prove concealment. *See, e.g., United States v. Meade*, No. 11-51-GFVT, 2015 WL 1649118, at *7 (E.D. Ky. Apr. 14, 2015), *aff'd in relevant part*, 677 F. App'x 959 (6th Cir. 2017) ("'the predicate offense of transporting a stolen vehicle does not require proof of a *financial transaction* . . . whereas money laundering does."). Further, Myers' argument here is inconsistent with the Sixth Circuit's holding in his direct appeal, where the Circuit recognized that the stolen motor homes themselves were the "proceeds" of his thefts, and Myers "completed the laundering of those 'proceeds' by using the stolen motor homes' clone titles to sell them to unsuspecting dealers and by withdrawing the sale money in cash." *Myers*, 854 F.3d at 350.

Relatedly, Myers argues that there was insufficient evidence of money laundering because he claims he did not intend to disguise the funds he withdrew. He claims that when he withdrew the funds (using a false name and fake identification), he did not intend to conceal the source of the funds, but rather, just to "divvy up" and spend the cash. Again, this represents a fundamental misunderstanding of what money laundering is: acts designed in

whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds. It is a reasonable conclusion that Myers' use of a fake name and fake identification to withdraw untraceable cash was, in fact, money laundering, and Myers' disagreement with the jury's logical conclusion does not render the evidence insufficient. What Myers did with the cash after he withdrew it is irrelevant; the jury was instructed that the Government only needed to prove that the withdrawals themselves were designed to conceal. There is no requirement that the money be additionally laundered. Myers claims here are meritless.

**Ground Five: Ineffective Assistance of Counsel – Subpoenas for Sentencing Witnesses**

Myers argues that both trial and appellate counsel were ineffective for failing to object to the Court's denial of subpoenas for witnesses at sentencing and failing to raise the issue on appeal. Myers argues that the PSR improperly calculated the amount of consequential damages, so he asked his attorneys to subpoena all alleged victims to provide testimony that they did not suffer losses in the amounts contained in the PSR. Myers concedes that at sentencing, he did agree that the subpoenas would not be necessary "based on the Court's assurance that the consequential damages were irrelevant and would not be used" (*see* ECF No. 177 at PageID.2492). He claims that Judge Bell then "sandbagged" him by using the consequential damages at sentencing; his attorneys should have objected once they saw that Judge Bell "violated" the "agreement" he and Myers had reached (ECF No. 211 at PageID.3878).

As before, this argument is contradicted by the record: Weiner-Vatter filed a motion seeking subpoenas for six witnesses to appear at sentencing, including one expert witness (*see*

ECF No. 148). The Government objected, arguing that some of these witnesses had testified about the amount of loss at trial, so their testimony was unnecessary and cumulative (*see* ECF No. 150). The Court held an in camera hearing on the motion with just Myers, Weiner-Vatter, and the probation officer present (*see* Transcript of In Camera Hearing, ECF No. 177). At that hearing, the Court agreed that consequential damages were not relevant, which rendered two of the six requested witnesses unnecessary (*Id.* at PageID.2475). The Court asked for an affidavit from the expert witness, which defense counsel agreed to, rendering live testimony unnecessary (*Id.* at PageID.2491-92). And the Court agreed that it would determine losses for the remaining three witnesses based on the intended loss, rather than how much they had been reimbursed, which absolved the need for their testimony (*Id.* at PageID.2479-81). At the conclusion of this hearing, Myers and Weiner-Vatter conferred off the record (*Id.* at PageID.2492). Weiner-Vatter reported to the Court that Myers was "very happy" with the outcome (*id.*), so the Court entered an order denying counsel's motion for subpoenas (ECF No. 155).

But even so, Myers is not entitled to relief on this ground because he cannot show prejudice. Even if he were correct that the Court should have applied a 16-point enhancement for the amount of loss (rather than the 18-point enhancement that it actually used), that would not have changed his guideline sentencing range. The PSR calculated Myers' offense level at 42 and his criminal history category at VI (*see* ECF No. 147 at PageID.1074). This put his guideline range at 360 months to life (capped here by the statutory maximum sentence of 1,140 months). But the guideline range for an offense level of 40 and criminal history of VI is also 360 to 1,140 months. Therefore, any alleged error

here has no impact on his guideline sentencing range, so Myers cannot establish actual prejudice. This defeats this claim for ineffective assistance of counsel. *Maupin*, 785 F.2d at 139.

### Ground Six: Ineffective Assistance of Counsel – Alleged Loss Calculation Error

Myers next argues that all of his attorneys were ineffective for failing to argue at trial or raise an argument on appeal that the Court erred in calculating the loss amount by including consequential damages. As above, Myers argues that the "correct" loss amount excludes consequential damages and was somewhere between $1,000,000 and $2,500,000, which would have resulted in a 16-level adjustment (*see* ECF No. 211-2 at Exh. N). For the same reason just explained, Myers's argument fails. Any alleged error had no impact on his guideline sentencing range, so Myers cannot establish actual prejudice. This defeats this claim for ineffective assistance of counsel. *Maupin*, 785 F.2d at 139.

### Ground Seven: Ineffective Assistance of Counsel – Obstruction of Justice Enhancement

Myers argues that his counsel were ineffective for failing to argue that the Court erred when it applied the two-level enhancement for obstruction of justice. The probation department recommended a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because Myers committed "obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense." (ECF No. 147 at ¶ 115.) As Myers acknowledges, counsel raised an objection to the obstruction enhancement in the PSR and in the defendant's sentencing memorandum. (*Id.*, Objection 5, PageID.1070; ECF No.159 at PageID.1136-38.) The enhancement was extensively argued at sentencing. (ECF No. 178 at PageID.2524-32.) Although the Court described it as "a close

question," the Court concluded that the enhancement applied in this case (*Id.* at PageID.2532-35).

Myers now argues that his counsel were ineffective for failing to specifically argue that the obstruction of justice could not be applied to the money laundering guidelines (which drove his sentencing guideline range). Myers relies on U.S.S.G. § 2S1.1(a)(1) and the corresponding application note 2(C). Section 2S1.1(a)(1) provides that the base offense level for a money laundering offense is "[t]he offense level for the underlying offense from which the laundered funds were derived[.]" Application Note 2(C) to that guideline provides that "in cases in which subsection (a)(1) applies, application of any Chapter Three adjustments shall be determined based on the offense covered by this guideline (*i.e.*, the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived." Based on these provisions, Myers argues that he should not have received an obstruction of justice enhancement because his obstructive conduct related to the theft/transportation/sale of the stolen vehicles, not his money laundering offenses. (ECF No. 211-2 at Exh. O.) He notes that his counsel did make an Application Note 2(C) argument against imposing a leadership enhancement for the money laundering offense (ECF No. 178 at PageID.2520), but not as to the obstruction enhancement.

However, Myers' argument here, if successful, would only result in a two-level change. As explained above, a two-level decrease fails to show actual prejudice. Even if Myers were correct in arguing that the Court should not have imposed the two-level obstruction of justice enhancement, any error would not have impacted his guideline range. Therefore, Myers

cannot show actual prejudice, and this defeats his ineffective assistance of counsel claim. *Maupin*, 785 F.2d at 139.

And even if Myers could demonstrate that the Court erred in both its calculation of consequential damages and application of the obstruction of justice enhancement (resulting in a combined decrease of four levels to his offense level), he still cannot show prejudice: the guideline range remains 360 to 1,140 months' imprisonment with even a five-level decrease. Accordingly, the Court need not review the merits of either issue, as even with the combination of both, Myers fails to demonstrate prejudice.

## Ground Eight: Ineffective Assistance of Counsel – "Unresolved" Sentencing Issues

Myers argues that all of his attorneys erred by failing to raise and resolve the eight sentencing issues outlined below, and in turn, that their performance was ineffective.

Federal Rule of Criminal Procedure Rule 32(i)(3)(B) provides that at sentencing, the Court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." This applies to factual disputes, not legal objections. *See United States v. McGee*, 529 F.3d 691, 700-01 (6th Cir. 2008). To trigger the rule, "the defendant must actively raise the dispute during the sentencing hearing before the district court's duty to find facts arises." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). Any violation of the rule is deemed to be harmless if it did not affect the defendant's sentence. *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003). Finally, counsel's failure to raise a viable argument at sentencing that would reduce the defendant's sentence may constitute a deficient

performance. *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012). But, as will be explained, the Court finds no merit in any of Myers' eight arguments, so counsel was not deficient.

First, Myers argues that the probation officer that prepared his PSR did not "show his work," so Myers and his counsel were unable to "check his findings." This claim fails for two reasons. First, because it is contradicted by the record: the PSR contains a clear and detailed outline of the probation officer's calculations and results (*see* ECF No. 147 at PageID.1044-45). And second, Myers does not allege, much less show, how this alleged error prejudiced him. Indeed, Tableman considered the issue and "did not see any problems with the way the probation officer analyzed" Myers' guideline range (ECF No. 222 at PageID.4064). The Court finds no error here.

Second, Myers argues that Counts 1 through 5 were multiplicious, since they all charged the same conspiracy listed in Count One; in Myers' eyes, they should have been merged at sentencing. Myers' counsel raised this issue on appeal, *see Myers*, 854 F.3d at 355-56, so counsel cannot be held ineffective for failing to raise the issue when he did, in fact, do so.

Third, Myers again argues that Counts One and Five were a single conspiracy that should have been merged at sentencing. This issue was raised on appeal and rejected, *see id.*, so counsel was not ineffective for failing to raise this issue.

Fourth, Myers claims that he has already been punished for Counts One through Five via the restitution order in Nunley's case. This issue was raised in Ground One of the instant motion, and is rejected for the reasons explained above.

Fifth, Myers argues that the Court miscalculated the loss amount. This issue was raised in Ground Six of the instant motion, and is rejected for the reasons explained above.

Sixth, Myers argues that the Court "effectively ungrouped the money laundering counts from the theft counts by using specific offense characteristics from both chapter two levels." But he does not explain this alleged error, nor does he explain how, if it was erroneous, it prejudiced him. Such a conclusory claim of error and prejudice is insufficient to establish ineffective assistance of counsel. *See Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) ("Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.").

Seventh, Myers argues that the Court left a sentencing disparity issue unresolved: the disparity between Myers' sentence and Nunley's sentence. Myers' counsel raised this issue in his sentencing memorandum (ECF No. 159 at PageID.1141). At sentencing, the Court addressed this issue, noting that Myers was more culpable than Nunley and that Myers was a recidivist that has stated that he would "never fly right" (*see* ECF No. 178 at PageID.2552, 2558).

"Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. It is not concerned with disparities between one individual's sentence and another individual's sentence[.]" *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (internal citations omitted). Further, " 'disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.' " *United States*

*v. Graham*, 564 F. App'x 196, 199 (6th Cir. 2014) (quoting *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008)).

Judge Bell expressly considered the differences between Myers' and Nunley's conduct and crafted a sentence for Myers based on the applicable § 3553(a) factors. There is no requirement that co-defendants' sentences be uniform, so Myers' argument here is frivolous. Counsel cannot be deemed ineffective for failing to raise this issue. Accordingly, Myers has failed to establish a claim for ineffective assistance of counsel. *Sutton*, 645 F.3d at 755.

Eighth and finally, Myers claims that he and the Government agreed that the loss amount should not include the value of the motor home stolen from North Carolina and agreed that a 16-level loss adjustment should apply, so when the Court failed to address this issue, counsel was ineffective for failing to object. This argument is contrary to the record. Myers' counsel advocated for the loss calculation Myers thought was appropriate; the Government responded; and the Court made its own loss finding (*see* ECF No. 178 at PageID.2498-2505). There is simply no record evidence of any "agreement" between Myers and the Government, and even if there was, it is well settled that a court is not bound by parties' stipulations as to applicable loss amounts. *See, e.g., United States v. Folliet*, 574 F. App'x 651, 658 (6th Cir. 2014). Therefore, Myers has failed to establish ineffective assistance of counsel.

**Ground Nine: Ineffective Assistance of Counsel – Sentence above the Statutory Maximum**

Myers argues that all of his attorneys were ineffective for failing to argue that he was improperly sentenced above the statutory maximum for his convictions: Myers believes he

was sentenced to 34 months above the statutory maximum. This claim is frivolous at best. Myers was convicted of seven counts that resulted in a total statutory maximum of 95 years, which is 1,140 months (*see* ECF No. 147 at PageID.1074). The Court had discretion to run his sentences on each count concurrently or consecutively. *See* 18 U.S.C. § 3584. Therefore, the Court could have sentenced him to any term of months up to 1,140 months' imprisonment without exceeding the statutory maximum.

The Court sentenced Myers to 394 months' imprisonment, but then applied a downward adjustment of 34 months to adjust for the term of custody that Myers had already served (*see* ECF No. 178 at PageID.2559). The Court then imposed the maximum statutory penalty for each count but concurrently, which resulted in the 360-month sentence. The Court acted in accordance with 18 U.S.C. § 3583, and therefore, there was no basis on which counsel could have objected. *See, e.g.,* U.S.S.G § 5G1.2(d); *United States v. Smith*, 191 F. App'x 383, 388 (6th Cir. 2006) ("Smith mistakenly assumes that the 120-month statutory maximum for [Count 1] bars the district court from stacking two sixty-month sentences for [Counts 3 and 4] . . . [to arrive] at a total sentence of 240 months."). Accordingly, none of Myers' attorneys were ineffective for failing to raise a meritless objection.

**Ground Eleven: Ineffective Assistance of Counsel – Restitution was Double Jeopardy**

Myers again argues that his counsel were ineffective for failing to object or otherwise argue that sentencing Myers to restitution in this case violated his Fifth Amendment protection against double jeopardy because of the restitution order in Nunley's case. This is the third iteration of the same argument presented in Ground One above. It is rejected for the same reasons explained above.

## Ground Thirteen: Ineffective Assistance of Counsel – Consequential Damage Amount

Myers argues that all of his counsel were ineffective for failing to object to the amount of consequential damages because he believes the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, limits the restitution amount to the replacement value of the property. Myers believes there is an error based on the "over $636,000 in consequential damages which were included in the restitution," though it is unclear where he came up with this number.

This claim fails for two reasons. First, because it is incorrect that restitution is limited to the replacement value of relevant property: 18 U.S.C. § 3663A(b)(4) requires a district court "to order restitution to 'reimburse the victim for . . . other expenses incurred during participation in the investigation or prosecution of the offense." *United States v. Elson*, 577 F.3d 713, 726 (6th Cir. 2009) (quoting 18 U.S.C. § 3663A(b)(4)). The Supreme Court has since clarified that "the words 'investigation' and 'proceedings' in the [statute] refer to government investigations and criminal proceedings," but that such expenses nevertheless remain within the proper scope of the statute. *Lagos v. United States*, 138 S. Ct. 1684, 1690 (2018).

Second, Myers has not identified, and the Court cannot locate, any consequential damages that were included in his restitution. The judgment lists specific restitution amounts payable to each victim (*see* ECF No. 164 at PageID.1194-95). Comparing those amounts with the loss amounts listed in the victim-impact section of the PSR (ECF No. 147 at PageID.1035-42) reveals that the Court did not order restitution for "consequential damages." The restitution amounts are each the value of the property on the date of the loss

less the value of any part of the property that was returned, in accordance with 18 U.S.C. § 3663A(b)(1).

Myers has failed to demonstrate that he was ordered to pay restitution for "consequential damages," so his attorneys cannot be held ineffective for failing to raise this meritless issue. *Sutton,* 645 F.3d at 755. This defeats Myers' claim.

### Ground Fourteen: Ineffective Assistance of Counsel – Inclusion of "Uncharged Conduct" in Restitution Order and Double Jeopardy

Myers argues that his counsel was ineffective for failing to object when the Court erred by ordering restitution for uncharged conduct (the 2006 Travel Supreme) and the offense for which he had already been ordered to pay restitution in the District of Arizona.

As the Court noted in Ground Three above, the 2006 Travel Supreme was not specifically listed in the indictment, but it was properly considered in the conspiracy charged as Count 1. Myers was convicted of this count, so he was properly ordered to pay restitution for this conduct. *See* 18 U.S.C. § 3663A(a)(1-2). His counsel was not ineffective for failing to raise a meritless argument to the contrary. *Sutton,* 645 F.3d at 755.

Regarding the Arizona conduct: Myers' argument here is conclusory. He does not cite to the record or any authority to support his argument, so the Court can dismiss this claim as waived. *See United States Keller,* 498 F.3d 316, 326 (6th Cir. 2007) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Even if the Court considered the argument, it would be meritless as it is contradicted by the record. The Court explicitly excluded restitution for two claims related to the Arizona matter (*see* ECF No. 178 at PageID.2539). Therefore, as has become a

theme, Myers argument is contradicted by the record, and he cannot establish that his counsel's performance was deficient.

### Ground Fifteen: Ineffective Assistance of Counsel – Unwarranted Sentencing Disparities

Myers' final argument is that his counsel were ineffective for failing to object to the unwarranted sentencing disparities between his sentence and the national average federal sentence for non-violent interstate transportation of stolen vehicle cases. Myers argues that the national average sentence for a case like his is only 8.5 years (or 102 months).

At sentencing, federal judges are required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Gall v. United States*, 552 U.S. 38, 54 (2007) (citing § 3553(a)(6)). As noted above, this concern involves "national sentencing disparities rather than sentencing disparities among codefendants." *United States v. Peppel*, 707 F.3d 627, 638 (6th Cir. 2013). "[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall*, 552 U.S. at 54. But "concern about unwarranted disparities is at a minimum when a sentence is within the Guidelines range." *United States v. Willingham*, 497 F.3d 541, 545 (5th Cir. 2007) (citation omitted); *see also United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011) ("The point of the guidelines is to decrease sentencing disparities, an objective *furthered* by a within-guidelines sentence, as opposed to a sentence that varies above or below the advisory guidelines range. The very thing Swafford presumably wants—a below-guidelines sentence—is more likely to create disparities than eliminate them.")

Myers claims that the national average sentence for similar convictions is 102 months, but he does not support this claim with any evidence. Even if he had, such a broad definition of the "comparable average sentence" is not truly comparable to the circumstances of Myers' conduct and conviction: the result is that it is not a meaningful benchmark. "National averages of sentences that provide no details underlying the sentences are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases." *Willingham*, 497 F.3d at 544. Such averages "disregard individual circumstances and only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants; consequently, they are basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted." *Id.* at 544-45.

In any event, what Myers fails to acknowledge is that his sentence was driven by the money laundering guidelines, not the stolen vehicle guidelines, so the comparisons he attempts to draw are improper. Further, he cites Nunley's sentence, but he acknowledges that the disparity rule does not apply to co-defendants. Neither of Myers' arguments are persuasive. Finally, the Court notes that Myers received a sentence at the low end of the guidelines range. One of the purposes of the guidelines is to maintain uniformity in sentences; the in-range sentence is presumptively not a disparity. The Court finds no merit to this argument, and Myers' counsel were not ineffective for failing to raise a meritless issue. *Sutton,* 645 F.3d at 755.

# IV. Miscellaneous Matters

## A. Hearing

In an action to vacate or correct a sentence, the Court need not hold a hearing if the motion and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255(b). "The statute 'does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made.' " *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). Moreover, no evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo*, 178 F.3d at 782 (quotation omitted). Nor is an evidentiary hearing required when a petitioner has made only "bald assertions and conclusory allegations." *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006).

Given that the Court concludes that Myers' arguments are meritless (and that many of them are plainly contrary to the record), the Court finds that no hearing is necessary. Myers' motion for a hearing (ECF No. 214) will be denied.

## B. Discovery

Myers has filed a Motion for Discovery, seeking "copies of the original police reports taken at the time the [motorhomes] were discovered to be stolen," and "interrogatories of

Ms. Jolene Weiner-Vatter, Brian Lennon, . . . and Kenneth Tableman" (ECF No. 213 at PageID.4005-06.)

"Habeas petitioners have no right to automatic discovery." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (citation omitted). Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that the Court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." To demonstrate good cause, Myers must provide specific allegations that show reason to believe that he may be able to demonstrate that he is entitled to relief. *Williams*, 380 F.3d at 974. As the moving party, Myers carries the burden of demonstrating that the information requested is material. *Id.* "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Id.* (citing *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)). Nor are conclusory allegations enough to warrant discovery. *Id.*

Myers has failed to establish good cause for the production of police reports for several reasons. First, he already has some of the reports: he attached one as an exhibit to his motion (*see* ECF No. 211-2 at PageID.3951-55). Second, he could obtain copies of these reports from any of his three attorneys. Third, Myers admits that he does not know what the police reports contain, but speculates that they will show "fabricated losses." This is no more than wishful thinking on Myers' part, and it is inadequate to establish good cause. Fourth and finally, the Court has concluded that Myers' claims all fail as a matter of law, and no further development of facts from the police reports (or otherwise) will save his claims.

The request to serve interrogatories on Myers' former attorneys fares no better. The Court has determined that all of Myers' ineffective assistance of counsel claims fail as a matter of law, so there is no need for counsel to respond to Myers' proposed interrogatories. Myers' motion for discovery (ECF No. 213) will be denied.

## C. Service

Finally, Myers requests a change in the way the Government's motions are served on him (*see* ECF No. 225). Given that there are no outstanding motions from the Government and that Myers has filed a reply to the Government's response to his motion (*see* ECF No. 240), this motion is moot.

## V. Conclusion

In summary, after considering Defendant's motion under § 2255 and supplements thereto, the Court finds that the grounds for relief are meritless. In addition, no evidentiary hearing or discovery is warranted because the motion, files, and records of the case conclusively show that Defendant is not entitled to relief. Consequently, the Court will deny the motion under § 2255.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529

U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

The Court has carefully considered the issues under the *Slack* standard and concludes that reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong. Accordingly, the Court will deny a certificate of appealability.

An order and judgment will enter consistent with this Opinion.

Date:  July 15, 2021                                             /s/ Paul L. Maloney
                                                                        Paul L. Maloney
                                                                        United States District Judge